UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re:                                                  Case No. 13-21229

TASHA RAE WEMIGWANS,                                    Chapter 13

        Debtors.                                  Honorable Daniel S. Opperman
_____/

OPINION REGARDING AMERICREDIT FINANCIAL SERVICES, INC.'S OBJECTION TO CONFIRMATION OF DEBTOR'S FIRST AMENDED CHAPTER 13 PLAN

Facts

Debtor financed a 2009 Chevrolet Malibu ("Vehicle") under the terms of a loan agreement dated June 17, 2009, with Americredit Financial Services, Inc., d/b/a GM Financial ("Americredit"). An interest rate of 19.25% was negotiated between Debtor and Americredit.

Debtor filed the instant Chapter 13 bankruptcy case on April 30, 2013. Pursuant to negotiations between Debtor and Americredit, which culminated in an Order dated July 16, 2013, a value of $11,000.00, was agreed to for the Vehicle. Debtor thereafter filed a First Amended Chapter 13 Plan on August 27, 2013, proposing to cram down the value of the Vehicle to $10,400.00, with interest at 4.25% per annum, with payments of $100.00 per month until administrative expenses are paid in full, with equal monthly payments to be received thereafter at the rate of $500.00 per month.

Americredit objects to the First Amended Plan, asserting that the interest rate should be the *"Till"* rate of interest as promulgated by the Supreme Court in the case of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), which would place the appropriate rate of interest at 6.25%, which

1

is the prime plus 3% rate. Americredit also objects to the First Amended Plan asserting that it does not provide for equal monthly payments to it.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

## Section 1325(a)(5)(B)(ii) and *Till* Rate of Interest

In accordance with the Supreme Court's decision in *Till v. SCS Credit Corp.*, and the subsequent opinion of the Sixth Circuit Bankruptcy Appellate Panel in *In re Taranto*, this Court applies the "prime-plus" formula to determine what interest rate satisfies the present value requirement of Section 1325(a)(5)(B)(ii). *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004); *Daimler Chrysler Svcs. North America, LLC. v. Taranto* (*In re Taranto*), 365 B.R. 85 (B.A.P. 6th Cir. 2007).

Pursuant to Section 1325(a)(5)(B)(ii), a secured creditor is entitled to the present value of its allowed secured claim. However, Section 1325(a)(5)(B)(ii) does not specify what interest rate will give a creditor "present value." In *Till*, the Supreme Court tackled this very question and identified and analyzed four distinct methods of calculating the appropriate interest rate. In the end, the Court held that the "formula" or "risk plus" approach was the more objective test.[1] *Till*, 541 U.S. at 473-74. Under the formula approach, the bankruptcy court will look at the prime rate as reported in the press and this rate is then adjusted according to the risk of default associated with payments over the term of a Chapter 13 Plan. *Id*. at 479.

The Supreme Court also held that the formula approach was a more familiar and

---

[1]The Court analyzed and subsequently rejected the presumptive contract rate approach, the cost funds approach and the coerced loan approach. *Till*, 541 U.S. at 477-79.

2

objective inquiry and would minimize the need for additional costly evidentiary proceedings. *Id*. at 479. "Moreover, the resulting prime-plus rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor. *Id*. Therefore, the contract rate of interest does not need to be considered by the Court. *Id*. at 477; *see also In re Soards*, 344 B.R. 829, 831 (Bankr. W.D. Ky. 2006).

> The *Till* Court noted that:
>
> > Together with the cramdown provision, the requirement obligates the court to select a rate high enough to compensate the creditor for its risk but not so high as to doom the plan. If the court determines that the likelihood of default is so high as to necessitate an "eye-popping" interest rate, the plan probably should not be confirmed.

*Till*, 541 U.S. at 480-81 (citation omitted). As noted by Judge Lundin in his treatise on Chapter 13 Bankruptcy, this statement from the majority opinion in *Till* suggests that:

> [T]he range of appropriate risk add ons is constrained by the policy favoring debtor rehabilitation. This ambiguity is sure to fuel arguments by creditors that risk add-ons in excess of the 1 - 3 percent range . . . are sometimes warranted.

Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th ed., § 112.2 (rev. April 14, 2009).

In addition to *Till*, case law from the Sixth Circuit Bankruptcy Appellate Panel supports a finding that the appropriate method for determining present value is the *Till* prime-plus approach. *DaimlerChrysler Servs. North America LLC v. Taranto (In re Taranto)*, 365 B.R.85 (B.A.P. 6th Cir. 2007). The Panel held that the *Till* rationale is valid and binding under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. As a result, the Panel remanded the Chapter 13 case back to the bankruptcy court for a determination of the

appropriate interest rate in accordance with the Supreme Court's analysis in *Till*.[2] *Id*. at 90-91. The Panel also held that although the Supreme Court in *Till* had interpreted Section 1325(a)(5)(B)(ii) in a case involving the strip down of a secured claim, "the statute applies to all cases in which a debtor's plan modifies the rights of a holder of a secured claim, without the consent of that creditor." *Id*.

Section 1325(a)(5)(B)(iii)–Equal Monthly Payments

Section 1325(a)(5) provides that the court shall confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan–

    (A) the holder of such claim has accepted the plan;

    (B)    (I) the plan provides that–

        (I) the holder of such claim retain the lien securing such claim until the earlier of–

            (aa) the payment of the underlying debt determined under nonbankruptcy law; or

            (bb) discharge under section 1328; and

        (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

    (iii) if–

        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal

---

[2]Prior to the Supreme Court's opinion in *Till*, the Sixth Circuit relied on the "coerced loan theory" in determining the appropriate cramdown interest rate. *See Household Auto Fin. Corp. v. Burden* (*In re Kidd*), 315 F.3d 671 (6th Cir. 2003); *Memphis Bank & Truste Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982).

monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

The issue under Section 1325(a)(5)(B)(iii) is whether this Code section requires the equal monthly payments to secured creditors to commence immediately upon confirmation of the plan, or whether the payments can be delayed to allow attorney's fees to be paid first. Prior to the 2005 amendments to the Code delayed payments were permitted if the delay was not excessive. The above-quoted language under the current Bankruptcy Code Section 1325(a)(5)(B)(iii)–"equal monthly payments"–could not be any clearer that delay is not permitted.

## Analysis and Conclusion

The Court begins its analysis with the *Till* formula for interest rate, which is the prime rate plus risk factor formula. The Court views *Till* as the starting point, and many, if not most times, the calculation and result should end there. Under the facts of this case, the Court concludes there is no reason to deviate from the *Till* formula. Under *Till,* this Court is obligated "to select a rate high enough to compensate the creditor for its risk," and this Court determines that 6.25% is the appropriate rate. The Court notes that Debtor had originally agreed to pay Americredit pursuant to the contract terms at the 19.25% interest rate, which is triple the interest rate currently proposed by Americredit.

The Court next addresses the Section 1325(a)(5)(B)(iii) equal monthly payment issue. The plain language of the current statute precludes delayed payments to creditors. If the Court

5

13-21229-dob    Doc 41    Filed 01/02/14    Entered 01/02/14 14:54:35    Page 5 of 7

interpreted this section to permit delayed payments, secured creditors who are entitled to monthly adequate protection payments pre-confirmation would be in a worse position post-confirmation, notwithstanding express language in the code entitling them to adequate protection "during the period of the plan." The Court finds no exception to the equal monthly payment requirement of Section 1325(a)(5)(B)(iii).

Accordingly, the Court sustains the objection of Americredit to confirmation of Debtor's First Amended Plan. The Court will not confirm Debtor's plan as currently proposed at the 4.25% interest rate for the Vehicle loan and with the proposed delayed payments to Americredit of $100.00/month, but will confirm a plan that contains the 6.25% interest rate, which this Court concludes factors in the risk of this loan under *Till*, as well proposes equal monthly payments to Americredit.

Counsel for Americredit shall prepare and submit an Order consistent with this Opinion.


Not for publication


**Signed on January 02, 2014**
                                                   **/s/ Daniel S. Opperman**
                                                   **Daniel S. Opperman**

United States Bankruptcy Judge